Case number 15-3554. Luis Cruz Osornio v. Loretta Lynch. All arguments not to exceed 15 minutes per side. Mr. Douglas Wagle for the petitioner. Good afternoon now. Good afternoon, yes. And again, thank you for your patience for waiting this long. No problem. It's Douglas Wagle for the petitioner, Luis Cruz, who's with us today. Immigration Judge Newberry in Detroit always used to call me Mr. Wiggles, but I always took that as a term of endearment. Today we have a, oh and I would request reserving two to three minutes for rebuttal if I could please. Very well. Today we have a rather focused argument on an immigration case. We don't often see cancellation cases coming to the Sixth Circuit, but this one is a very pointed reference to a statutory interpretation of whether voluntary departure would break the continuous presence of an immigrant. Okay, we know that that is the issue that's been framed to us, but in our review of the case, it appears that there may be a more straightforward resolution of the case, and that involves the 2003 notice to appear. Maybe Judge Kethledge can argue the point. Yeah, so I mean the board, I mean it seems undisputed, and the board in its decision refers to a notice to appear that was served upon your client in 2003. If so, that terminates his period of continuous residency, which makes him ineligible for this discretionary relief because he would not have the ten years continuous residency that's necessary for it. Why doesn't that resolve the case? It probably doesn't because I seem to recall, and again, that issue was not particularly briefed by I think either party in that. Right, but if it moots an important statutory issue, then why would we tee up an issue? I believe, and again, seeing as how it wasn't one of the issues in the case, I didn't go there for research, but I seem to recall a recent case, and it may have been Ninth Circuit which generates a lot of these cases, or it may have been one of the other circuits. They had an issue with the service breaking the continuity of the physical presence, primarily because in that particular case they had the service of the notice to appear, which often is done by the agent who interviews the respondent, and then forever went by before the case was ever docketed before the court. And so the circuit court had a problem with exercising a statutory break in the continuous presence based upon something like that. I currently have a case right now with a Caribbean client who was given a notice to appear by mail, copy to me, in March of 2014, and to this date has not been docketed with the immigration judge. Well, I mean, I guess, again, it just seems pretty straightforward. I mean, the statute itself says the period of continuous physical presence shall be deemed to end when the alien is served with a notice to appear under section 1229A. And the board's decision itself recites that he was given a notice to appear in connection with his voluntary departure in 2004. The fact of this notice to appear is discussed in the immigration court. The judge and counsel refer to it. There seems to be no occasion for us to take on a difficult question of statutory interpretation when, based upon the undisputed facts as reflected in the board's opinion, the issue is simply not presented here, unless we're missing something. That is what the law says. I'm aware of the statute, and it is, of course, in the actual statute that service of a notice to appear would break the continuity. It says nothing about the docketing of the subsequent action predicated upon that notice. It doesn't. The service. But, again, I didn't come prepared to deal with that issue because, for some reason, that wasn't articulated as a reason to pre-term it with either the immigration judge or the board. I'm not sure why because I've had it thrown in my face often before in other cases. But in this particular case, the issue— Do you want time to respond to that? I mean, you say that you're not quite prepared. Is it something that you would want to— If this is an issue the court is looking at to determine whether that should go forward or not, I would request the opportunity to myself or Mr. Lewis, who I'm appearing here for today, to take a look into that issue because, as I say, I don't often run against this type of thing. How much time do you need? Probably a couple weeks or so for my schedule. I mean, it wouldn't be that hard to dig up in the computer system. It's not like going to the old days pulling books down. All right. We'll give you 14 days to file a letter of supplemental authority on the issue. Just knowing that the panel is concerned because this issue did jump out at us as we were reviewing the case. And as Judge Kethledge said, issues of first impression, I think, for the Sixth Circuit, I mean, we could decide them. But if there's an easier way not to, we'll often go that direction. And this—what concerned me a little bit was it wasn't brief. It wasn't raised by the other side. But it is so obvious that it's almost like a plain error claim. My congratulations to the panel for focusing on some of the arcane parts of the immigration law. Okay. All right. But we'll grant you 14 days to file a supplemental letter of authority on it. And I guess— Response? Seven days to respond after that? Sure. That would be fine. Thank you. Okay. I presume you have no reason to voice any different view with respect to this proposed process? No, Your Honor, I do not. Okay. Anything else today? Nothing else today. All right. I'll do it as an additional citation submission to the court. All right. Thank you very much. Thank you, Judge. Good day. Anything from the government? Do you agree with our analysis here of the effect of the notice of appear? Your Honors, I do agree with that analysis. I do think that, based on the record, the potential hiccup there is that 2003 or 2004 notice to appear does not appear in the record. And I believe the petitioner testified. I appeared before an immigration judge. I think he, at one point, said that was in 2003. At another point, he said it was 2004. It doesn't matter. Either way, that would have broken the continuous presence that was needed. However, I don't believe that the petitioner specifically testified as to the date of service for that notice to appear. And with that notice to appear not being in the record, it's the government's request that the court simply affirm the agency's conclusion that the 2004 voluntary departure interrupted. I was concerned that the document wasn't in the record. But I thought that he had made concessions in his testimony that we could, rather than rely on the specific document, that we could rely on his concessions. And you're not sure we can? Is that it? Well, Your Honor, I would appreciate the fact to review the testimony again regarding this issue. And I think the 28J letter that Your Honor suggested would provide the government with an excellent opportunity to do that. My understanding of his testimony, however, was that he testified that he appeared before an immigration judge in 2003 or 2004.  However, I don't believe he specifically testified as to the date of that notice. But, again, a 28J letter by the government would provide us an excellent opportunity to double check. But, I mean, you know, it just seems pretty obvious that he got an NTA sometime around 2003. And, you know, the board references this in their opinion. We affirm or we review the board's reasoning, right? Correct. And if the petitioner has not objected to that particular recitation, then really an objection to that fact or that statement is probably waived. I mean, not to the exclusion of what counsel is going to tell us, but as far as this sort of forensic business, I mean, there's not a lot of doubt. It seems. Right. And I think that Your Honor raises an excellent point that, you know, if this court were to send this case back to the agency for fact finding about this earlier notice to appear, it seems like that would really, you know, possibly just be an exercise in futility and a waste of everyone's time because it does seem so clear that he was placed in removal proceedings around 2003, which would break the continuous presence which needed to date back to February 17th of 2000. Any further questions at this time? No questions. All right. Thank you so much for appearing and thank you. Thank you, Your Honors. The case will be submitted. You may call the next case.